UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DANIEL A. NELLIS, | |
| Plaintiff, | DECISION and ORDER |
| -vs- | 22-CV-6429 CJS |
| NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, M. CORYER, Deputy Superintendent of Medical Health Elmira Correctional Facility, M.D. JOHN RICCIARDELLI, in is official and Individual capacity, M.D. CAROL MOORES, in her official and individual capacity, M.D. JILL NORTHROP, in her official and individual capacity, | |
| Defendants. | |

_____

INTRODUCTION

Daniel Nellis ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who is represented by counsel, paid the filing fee and commenced this action purporting to assert claims under 42 U.S.C. § 1983 ("Section 1983), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"). Now before the Court is a motion for partial dismissal of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") filed by defendants DOCCS, John Ricciardelli ("Ricciardelli"), Carol Moores ("Moores") and Jill Northrop ("Northrop").[1] For

---

[1] Defendants' reply contains the following notation: "NOTE: Dr. Coyer has not yet requested a defense or representation from the Office of the Attorney General. Accordingly, counsel cannot move to dismiss on behalf of Dr. Coyer." The Court additionally notes that the Complaint contains reference to a defendant named Heather Snide, but Snide's name is not included in the caption, and no summons was issued for her.

1

the reasons explained below, Defendants' motion is granted in part and denied in part.

BACKGROUND

Unless otherwise stated, the following facts are taken from Plaintiff's Complaint, and are assumed to be true for purposes of this Decision and Order. Plaintiff is diagnosed with "Charcot-Marie-Tooth Disease," "a progressive disease of the nerves that causes [him] to suffer decreased sensation of bilateral feet and ankles, and a deformity of his left foot." The Complaint indicates that prior to September 2019, Plaintiff was receiving appropriate medical care for this condition at various DOCCS facilities. In particular, the pleading indicates that in early September 2019, while at Downstate Correctional Faciity, he sprained his ankle, and Downstate issued him "a cane to assist him in walking."

However, in September 2019, Plaintiff was transferred to Elmira Correctional Facility ("Elmira"), where he claims medical staff denied him proper treatment. The Complaint indicates that defendant M. Coryer ("Coryer") was "Deputy Superintendent of Medical Health" at Elmira; that John Ricciardelli, M.D. ("Ricciardelli") was "a physician" at Elmira; that Carol Moores, M.D. ("Moores") was a "Deputy Commissioner and Chief Medical Officer" for DOCCS; and that Jill Northrop, M.D. ("Northrop") was "a physician" at Elmira. The Complaint contends that Moores was aware that Plaintiff had "Charcot-Marie-Tooth Disease" and indicated that she would refer Plaintiff for various treatments, but failed to make the referrals until months later, after Plaintiff had filed a grievance. For example, the Complaint alleges that it took ten months before Plaintiff was allowed to see an orthopedic specialist. The pleading further contends that on one occasion, for unspecified reasons, Northrop directed corrections officers to take Plaintiff's cane, which

2

he needed to ambulate, from his cell. (The cane was returned one week later.) The Complaint further alleges that even though Plaintiff had difficulty walking, he was initially, for the first forty days he was at Elmira, placed on the fifth floor, "which required him to navigate multiple stairs on a daily basis in order to access the mess hall and other services," before he was eventually allowed to use a cane. Later, approximately five months after Plaintiff arrived at Elmira, he was placed in "medical keeplock," which required him to stay in his cell 24 hours per day and prevented him from accessing "appropriate medical care" and "benefits other inmates [were] given," such as "access to showers, recreation," and "human interaction." Plaintiff subsequently sent a letter to Moores and Coryer to complain about the fact that Moores was not following through on her treatment recommendations, and about being in medical keeplock. Plaintiff did not receive a response from Moores, though he received responses from several DOCCS officials, including Coryer, who indicated that a review of Plaintiff's medical chart showed "no evidence to support any lack of medical care or treatment." ECF No. 24-12 at p. 2.

The Complaint purports to set out four causes of action: 1) an Eighth Amendment "deliberate medical indifference" claim; 2) and Eighth Amendment "conditions of confinement" claim; 3) an ADA claim; and 4) a Section 504 claim. The Complaint seeks only monetary damages. The first and second claims appear to be asserted against all defendants, while the third and fourth claims appear to be asserted just against DOCCS. The first claim contends that Defendants subjected Plaintiff to cruel and unusual punishment by acting with deliberate indifference to his serious medical needs, while the second claim alleges that Defendants subjected Plaintiff to cruel and unusual punishment by placing him in medical keeplock for approximately four months.

On January 27, 2023, movants filed the subject motion for partial dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 18).  The motion is directed at just the first two causes of action under Section 1983.  The grounds for Defendants' motion are as follows: 1) the claims against DOCCS and against Ricciardelli, Moores, and Northrop in their official capacities are barred by Eleventh Amendment sovereign immunity; 2) the first cause of action fails to state an actionable claim against the movants in their individual capacities, since it fails to allege that Ricciardelli, Moores or Northrop had the requisite subjective state of mind (deliberate indifference);  3) the second cause of action fails to state an actionable claim against the movants in their individual capacities, since it does not allege that Ricciardelli, Moores or Northrop was personally involved in placing Plaintiff in medical keeplock, and since placement in medical keeplock is not an atypical or significant hardship on an inmate in the context of ordinary prison life.

On May 4, 2023, Plaintiff filed his opposition to the motion to dismiss. (ECF No. 24).  Plaintiff's response maintains that he has sufficiently pleaded the subjective and objective requirements concerning his first two causes of action, but does not address Defendants' argument concerning Eleventh Amendment sovereign immunity.

On May 11, 2023, Defendants filed a reply. (ECF No. 27) that essentially reiterates the arguments in their opening brief.

The Court has thoroughly considered the parties' submissions.

## DISCUSSION

Rule 12(b)(1) Standard

Defendants first maintain that all claims against DOCCS and against Ricciardelli, Moores, and Northrop in their official capacities are jurisdictionally barred by the

Eleventh Amendment.  Although Plaintiff opposes Defendants' motion in general, he does not address the sovereign-immunity argument.  Consequently, that aspect of Defendants' motion is unopposed.  In any event, Defendants' argument is correct.

Eleventh Amendment sovereign immunity protects states and arms of the state from being sued for money damages. *See, Caruso v. Zugibe*, 646 F. App'x 101, 104 (2d Cir. 2016) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state.") (citation omitted). The Eleventh Amendment similarly divests the Court of subject matter jurisdiction[2] over any claims for money damages against a state official acting in his or her official capacity unless the state has consented to the suit or waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).

Because there has been no waiver of immunity or consent to suit in this case, Plaintiff's Section 1983 claims against DOCCS and against the individual defendants in their officials capacities, all of which seek only money damages, must be dismissed. *See, Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) ("The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity.  This includes suits against state officials in their official capacities.  New York has not waived its immunity, nor has Congress abrogated

---

[2] *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("The Eleventh Amendment presents a jurisdictional bar that deprives federal courts of the power to hear certain claims."); *but see, Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 (2d Cir. 2020) ("Whether Eleventh Amendment immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense has not yet been decided by the Supreme Court or this Court."), *cert. denied*, —— U.S. ——, 141 S. Ct. 1070, 208 L. Ed. 2d 532 (2021), *reh'g denied*, —— U.S. ——, 141 S. Ct. 1530, 209 L. Ed. 2d 262 (2021).

it. Accordingly, the Eleventh Amendment bars Li's claims against defendants in their official capacities, and these claims were properly dismissed for lack of jurisdiction.") (citations omitted); *see also, Jaime v. New York State Dep't of Corr. & Cmty. Supervision*, No. 24-CV-4091 (LTS), 2024 WL 4791703, at *3 (S.D.N.Y. Nov. 14, 2024) ("DOCCS and its facilities are state entities that share in New York's Eleventh Amendment immunity."); *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-2884, 2025 WL 77230, at *9 (2d Cir. Jan. 13, 2025) ("We also affirm the dismissal of all seven Section 1983 claims against the State of New York, DOCCS, and Annucci acting in his official capacity as commissioner of DOCCS, as the Supreme Court has held that Section 1983 does not abrogate sovereign immunity.") (collecting cases).

<u>Rule 12(b)(6) Standard</u>

Defendants have also moved to dismiss the first two causes of action pursuant to Rule 12(b)(6), and the legal standards applicable to such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[3] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the

---

[3] The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

7

mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

As already mentioned, it is clearly settled that, "[i]n ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint." *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (citations and internal quotation marks omitted). However, it is equally clear that not every allegation made "upon information and belief" is entitled to be accepted as true:

> [W]hile a plaintiff may make allegations on information and belief, those allegations will be sufficient to support a claim for relief only when the factual matter pled supports a plausible inference of culpability. . . . A plaintiff may satisfy the plausibility standard by pleading facts upon information and belief, but a plaintiff cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.

*Evergreen E. Coop. v. Whole Foods Mkt*., Inc., No. 21-2827-CV, 2023 WL 545075, at *1-2 (2d Cir. Jan. 27, 2023) (citations omitted); *see also, United Prob. Officers Ass'n v. City of New York*, No. 21-CV-0218 (RA), 2022 WL 875864, at *9 (S.D.N.Y. Mar. 24, 2022)

8

("[T]he bare allegation that women of color are "paid less" than their white male counterparts in the same titles is a conclusory assertion that the Court need not accept as true. Again, even if pattern-or-practice plaintiffs cannot allege the precise amount of their coworkers' salar[ies], they should at least be able to allege the facts that form the basis for their belief that the coworkers are paid more.") (citations and internal quotation marks omitted); *Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2020 WL 6891814, at *4 (S.D.N.Y. Nov. 24, 2020) ("The Amended Complaint also alleges, "[u]pon information and belief," that Adams "knew that the Proprietary Contact Info was stolen." But to pass muster, an allegation upon information and belief must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation. Here, the allegation of Adams's knowledge falls far short.") (citations and internal quotation marks omitted).

*Section 1983 and Eighth Amendment Claims*

Plaintiff's first two causes of action seek relief under Section 1983 for alleged violations of Plaintiff's Eighth Amendment rights. "To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." *McCloud v. Jackson*, 4 F. App'x 7, 9 (2d Cir. 2001) (citation omitted).

> [Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. ... [For example, i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right.

*Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870–71, 104 L. Ed. 2d 443

(1989) (citations omitted).

To establish liability under Section 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional violation. *See, Ganek v. Leibowitz*, 874 F.3d 73, 92 (2d Cir. 2017) ("As the Supreme Court has instructed, because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff bringing [either type of claim] must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (citation and internal quotation marks omitted).

> Most cases addressing personal involvement do so in the context of supervisory defendants. A supervisory official is personally involved if "(1) [he or she] participated directly in the alleged constitutional violation, (2) [he or she], after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) [he or she] created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) [he or she] was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) [he or she] exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Brandon v. Kinter*, 938 F.3d 21, 36–37 (2d Cir. 2019) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). As particularly relevant to the instant action,

> [t]he fact that a prison official has a supervisory title or role at a prison does not automatically mean that the official was personally involved with or is liable for any misconduct by lower-level officers. *Raynor v. Maldonado*, No. 3:24-CV-1221 (JAM), 2024 WL 4533748, at *4 (D. Conn. Oct. 21, 2024). In addition, courts generally hold that correspondence from a plaintiff to a supervisory official is not sufficient to establish the official's personal involvement.

*Jordan v. Dep't of Corr.*, No. 3:24CV227 (VAB), 2024 WL 5112001, at *5 (D. Conn. Dec. 13, 2024) (collecting cases).

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment, which prohibits cruel and unusual punishment. In particular, the Complaint purports to

10

assert two different Eighth Amendment claims—a claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs, and a claim that Defendants were deliberately indifferent to Plaintiff's conditions of confinement.

The legal principles concerning both types of claim are well settled. Regarding a medical claim, a plaintiff must show that the defendant acted with deliberate indifference to a serious medical need:

> Mallet claims that his Eighth Amendment right to be free from cruel and unusual punishment was infringed by Defendants-Appellees' "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "The standard of deliberate indifference includes both subjective and objective components." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). First, Mallet must show that, while he was incarcerated, he suffered from a medical condition that is, "in objective terms, sufficiently serious." *Id*. (internal quotation marks omitted). Though there is no single metric, we have previously held that a "sufficiently serious" medical condition in the Eighth Amendment context refers to a "condition of urgency that may result in degeneration or extreme pain," id., that "significantly affects daily activities," or that involves "chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation marks omitted). The condition need not be "life-threatening" or "at the limit of human ability to bear," but it must be more than simply "uncomfortable and annoying." *Id*. at 163; *see also Collymore v. Myers*, 74 F.4th 22, 30 (2d Cir. 2023) (noting that Eighth Amendment deliberate indifference claim will be dismissed unless "a plaintiff plausibly alleges a condition that produces severe and unmanaged pain").

*Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-2884, 2025 WL 77230, at *4 (2d Cir. Jan. 13, 2025). Similarly, for a conditions-of-confinement claim, a plaintiff must show that the defendant was deliberate indifferent to conditions of confinement that posed an unreasonable risk of serious harm:

> Under the Eighth Amendment, a conditions of confinement claim has both objective and subjective components. First, the plaintiff must show that, objectively, "the conditions of his confinement result in unquestioned and

11

> serious deprivations of basic human needs." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (internal quotation marks and citation omitted). This prong is satisfied by a showing that the plaintiff's "conditions [of confinement] ... pose an unreasonable risk of serious damage to his health," that is, a deprivation of "basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citations omitted). Second, the plaintiff must establish that, subjectively, the defendant-officials were deliberately indifferent to the hazardous condition. *See Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Jolly*, 76 F.3d at 481 (explaining that deliberate indifference is "the subjective prong of the Eighth Amendment inquiry"). To establish deliberate indifference, a plaintiff must show that a prison official had the requisite "culpable intent," which is present if the official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (emphasis added). As such, "mere negligence will not suffice." *Id*.

*Smith v. New York State*, No. 23-6601-CV, 2024 WL 4746554, at *2 (2d Cir. Nov. 12, 2024).

Here, the Court finds that while the allegations are thin, at this early stage the Complaint adequately states the first cause of action against Dr. Moores. Regarding such claim, the pleading indicates that Moores was aware of Plaintiff's diagnosis and of his complaints of pain, but that she failed for many months to make the referrals that she told him she would make, which delayed his receipt of medical care and may have contributed to a worsening of his condition.

However, the Court agrees with Defendants that the Complaint fails to state an actionable medical deliberate indifference claim against Ricciardelli or Northrop. As Defendants observe, the Complaint contains just a single allegation concerning Ricciardelli, which, in its entirety, states: "Dr. John Ricciardelli, a prison physician, told the Plaintiff on several occasions that upon his examination, the Plaintiff should be in a

12

wheelchair. However, no wheelchair was ever provided." ECF No. 1 at ¶ 87. The Court finds that this bare allegation fails to state an actionable medical-deliberate-indifference claim against Ricciardelli, particularly since the Complaint elsewhere indicates both that Plaintiff was able to ambulate effectively using a cane, and that Dr. Moores issued Plaintiff a "a medical permit for use of wheelchair for long distances." ECF No. 1 at ¶ 39. Nor does the pleading otherwise plausibly plead Ricciardelli's personal involvement in the alleged constitutional violation.

As for Dr. Northrop, the Complaint also contains just a single allegation of wrongdoing, namely: "On or about March 30, 2020, Plaintiff's cane was removed from his cell by a Corrections Officer ("CO") at the request of Dr. Northrop." ECF No. 1 at ¶ 41. The pleading indicates that the cane was returned to Plaintiff a week later, after he complained. The pleading offers no factual support for Plaintiff's bald assertion that Northrop ordered a corrections officer to remove Plaintiff's cane from his cell. Additionally, the pleading admits that Northrop continued to provide medical treatment to Plaintiff, and assisted Plaintiff in obtaining orthopedic boots, after Moores allegedly failed to do so. While it is surely possible that Northrop ordered the removal of Plaintiff's cane, the pleading does not contain sufficient facts to make such allegation plausible. Moreover, even if Northrop did so, the pleading does not plausibly suggest that Northrop acted with deliberate indifference toward Plaintiff's serious medical needs, especially since Northrop had already provided assistance to Plaintiff in obtaining medical equipment to address his condition. Nor, in any event, does the Court find that the taking of Plaintiff's cane for seven days was an injury of constitutional magnitude. For example, the Complaint indicates that Plaintiff was originally given the cane in September 2019,

13

specifically because he had sprained his ankle. ECF No. 1 at ¶ ¶ 20-22. Presumably, the sprain had healed by the time the cane was confiscated six months later, but even if it had not, the Court still does not find that this isolated incident is sufficiently serious to support an Eighth Amendment claim. Nor does the pleading otherwise plausibly allege Northrop's personal involvement in the alleged constitutional violation.

In sum, the medical-deliberate-indifference claim may proceed as to Moores in her individual capacity, but is dismissed as to Ricciardelli and Northrop.

Regarding the second cause of action, the Court finds, preliminarily, that the pleading does not plausibly allege that Ricciardelli or Northrop were personally involved in the alleged conditions-of-confinement Eighth Amendment violation. Consequently, the second cause of action is dismissed as against Ricciardelli and Northrop. As for Moores, there is no plausible allegation that she was responsible for placing or maintaining Plaintiff in medical keeplock. Consequently, insofar as the pleading potentially shows any personal involvement by Moores in his conditions-of-confinement claim, it is only because Plaintiff contends that he wrote two letters to Moores. *See*, Complaint, ECF No. 1 at ¶ ¶ 39, 44. More specifically, the Complaint indicates that on or about February 21, 2020, Plaintiff wrote to Moores, "requesting showers and phone calls on the housing unit," and that on February 26, 2020, Moores,

> [n]oted that she received [the letter]. She also noted that he was awaiting MRI and orthopedic appointments, issued a medical permit for use of wheelchair for long distances, and a new medical permit to try to help limit his need for walking.

ECF No. 1 at ¶ 39. Plaintiff alleges that Moore's response was disingenuous, since she did not actually schedule his MRI and orthopedic appointments until in or about June 2020. However, that allegation goes to Plaintiff's first cause of action. Regarding his

14

second cause of action, the pleading acknowledges that Moores responded favorably to Plaintiff's letter by issuing him a medical permit for use of a wheelchair and a "new medical permit to try to help limit his need for walking." These facts do not state support a plausible claim that Moores' response to Plaintiff's February 2020 letter is indicative of deliberate indifference by her toward Plaintiff's conditions of confinement.

Subsequently, on or about June 8, 2020, Plaintiff wrote another letter, this time to both Moores and Croyer. See, ECF No. 1 at ¶ 44. According to the Complaint, this letter

> complain[ed] that despite being advised by Dr. Moores that she referred him for an MR[I] and orthopedic appointment, he still ha[d] not received either. [The letter] also complained that he ha[d] been locke in his cell 24 hours a day because he was place[d] on medical keeplock and [was] barely able to walk anymore.

ECF No. 1 at ¶ 44. The pleading indicates that Plaintiff received responses to this letter from three different DOCCS employees: A "captain" at Elmira; W. Mack Nurse Administrator 1; and Croyer. The pleading does not indicate that Plaintiff received a response from Moores, nor does it otherwise contain any facts suggesting that Moores had any involvement in deciding whether to retain Plaintiff in medical keeplock.[4] Indeed, the fact that Plaintiff received responses to that letter from three persons *other than* Moores suggests that Moores was *not* personally involved in that decision. Consequently, on the particular facts presented here, the Court finds that the mere fact that Plaintiff sent this letter to Moores is insufficient to support a plausible claim that Moores was personally involved in the conditions-of-confinement claim. *See, Mitchell v.*

---

[4] Although the Complaint does not indicate that Moores responded to this letter, it alleges that after Plaintiff sent the letter, Moores scheduled Plaintiff's MRI and orthopedic appointments. Complaint, ECF No. 1 at ¶ 40. If, as the pleading implies, Moores scheduled these tests *in response to* such letter, this suggests that she was *not* deliberately indifference to Plaintiff's complaints therein. At most, the Court views this letter, and Moores' response thereto, as relating to Plaintiff's first cause of action, not the second.

15

*Chappius*, No. 6:17-CV-06673 EAW, 2024 WL 4280829, at *20 (W.D.N.Y. Sept. 25, 2024) ("[T]he mere fact of having received a letter does not demonstrate deliberate indifference."); *see also, Thompson v. Renee*, No. 21-CV-10371 (VEC), 2023 WL 2575222, at *3 (S.D.N.Y. Mar. 17, 2023) ("[C]ourts have repeatedly held that the mere fact that a prison official has received letters from an inmate does not establish his or her personal involvement in action or inaction following receipt of the correspondence.").

Furthermore, even assuming *arguendo* that the Complaint adequately pleaded personal involvement, the allegations concerning the conditions of Plaintiff's confinement while in medical keeplock, involving an alleged lack of "access to showers, recreation," and "human interaction," do not support an Eighth Amendment violation. *See, Moreland v. Microgenics Corp*., No. 21CV00748ENVLB, 2022 WL 2657287, at *6 (E.D.N.Y. June 1, 2022) ("Although the conditions of prison confinement can give rise to a constitutional claim, *see Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002), courts have consistently held that—in the absence of facts suggesting extremely harsh and unusual conditions of confinement—a period of segregated confinement does not establish an Eighth Amendment claim."); *see also, Lopez v. Annucci*, No. 17-CV-6305-EAW, 2018 WL 11325795, at *5 (W.D.N.Y. Sept. 24, 2018) ("In order to demonstrate that the conditions of a plaintiff's confinement constituted cruel and unusual punishment, plaintiff must show that (1) the conditions of confinement resulted 'in unquestioned and serious deprivations of basic human needs ...' and (2) 'the defendants imposed those conditions with deliberate indifference.' *Welch v. Bartlett*, 125 F. App'x 340 (2d Cir. 2005) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996)). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of

an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991).").

In sum, the Court finds that the second cause of action must be dismissed as against Ricciardelli, Northrop and Moores, for failure to state claim.

CONCLUSION

Defendant's Motion to Dismiss (ECF No. 18) is granted in part and denied in part, as follows:  The first and Second Causes of Action are dismissed against DOCCS and the individual defendants in their official capacities; the first cause of action is also dismissed as against Ricciardelli and Northrop in their individual capacities, but may proceed against Moores in her individual capacity; and the second cause of action is dismissed as against Ricciardelli, Northrop, and Moores in their individual capacities.  By separate order the Court will refer this action to a United States Magistrate Judge who will oversee discovery and other pretrial matters.

SO ORDERED.

Dated: Rochester, New York
       January 27, 2025

ENTER:

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge